THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| AMELIA ARCAMONE-MAKINANO, et al., <br><br> Plaintiffs, <br> v. <br><br> DEBORAH HAALAND, in her capacity as U.S. Dept. of the Interior Secretary, et al., <br><br> Defendants. | REPORT AND RECOMMENDATION <br><br> Case No. 2:23-cv-396 DAK <br><br> District Judge Dale A. Kimball <br><br> Chief Magistrate Judge Dustin B. Pead |

Now before the court is Defendants' Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.[1] In the alternative, Defendants move the court to stay this case pending an appeal of another case involving the Onaqui Herd Management Area. For the reasons explained herein, the undersigned recommends that the court GRANT Defendants' Motion to Dismiss.[2]

**BACKGROUND**

**I.    Procedural Background**

This case concerns a July 2021 Gather and removal of wild horses from the Onaqui Mountain Herd Management Area (July 2021 Gather or Gather). Plaintiffs, who are proceeding pro se,[3] seek judicial review of agency actions surrounding the Gather. This case is not the first

---

[1] ECF No. 16. Defendants' Motion to Dismiss (Motion).

[2] This matter is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). ECF No. 2. Pursuant to DUCivR 7-1(g), the court finds oral argument is not necessary and decides the Motion on the papers.

[3] Courts construe the pleadings of pro se plaintiffs liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his

time Plaintiffs have contested the 2021 Gather. Plaintiffs were also involved in another case in this court.[4] In June of 2021, Arcamone-Makinano, along with another Plaintiff, filed suit in the Third District Court of Utah asserting the Bureau of Land Management (BLM) had violated the Wild Horse Act[5] and other environmental statutes (Arcamone-Makinano I). After removal to federal court, Guillermo Paz, a Plaintiff in the current dispute, and others were added via the first amended complaint. Following an initial denial of a motion seeking dismissal, the BLM filed a second motion to dismiss. After briefing was completed on the motion, the plaintiffs sought to file a second amended complaint adding Becky Peacock to that case. Peacock is a Plaintiff in the current action.

In February 2023, the magistrate judge in Arcamone-Makinano I, recommended dismissal because the court lacked subject matter jurisdiction. The magistrate judge reasoned that the plaintiffs had failed to show an injury in fact traceable to the July 2021 Gather. In March 2023, the district judge adopted the magistrate judge's report and recommendation dismissing that case for lack of subject matter jurisdiction and remanding the case back to state court. The court also denied the plaintiff's motion to file a second amended complaint adding Peacock, finding that the proposed amendment would be futile. An additional request to file a third amended complaint that would have added Peacock was also denied.

On remand, the state district court judge granted the BLM's motion to dismiss for lack of subject matter jurisdiction, and denied as moot, the plaintiff's motion to file a fourth amended

---

poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id*. However, "we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*.

[4] *See Arcamone-Makinano et al v. Bureau of Land Management et al*. Case No. 2:21-cv-458 JNP.

[5] 16 U.S.C. §§ 1331-1340.

complaint. The plaintiff's claims were then dismissed without prejudice May 25, 2023.[6] The following month in June 2023, Arcamone-Makinano, Paz, and Peacock filed the instant Complaint. Plaintiffs failed to timely serve the Complaint, and this court entered an Order to Show Cause.[7] Eventually, Plaintiffs properly served the Complaint approximately a year and a half after filing it. In addition, the court entered a second Order to Show Cause when Plaintiffs failed to oppose Defendants' current Motion to Dismiss.[8] Plaintiffs eventually filed an opposition to Defendants' motion.[9]

## II.    Factual Background

The facts here do not differ that much from Arcamone-Makinano I because this case also contests the 2021 Gather. Based on Plaintiffs' Complaint, in 2018 the BLM properly decided there was an overpopulation of horses on the Onaqui heard management area (HMA). To "achieve a thriving ecological balance and protect forage" the BLM decided to make an initial gather of wild horses and then return periodically to maintain the horse population.[10] The initial

---

[6] "Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Thus, "[w]hen a party presents matters outside of the pleadings for consideration ... 'the court must either exclude the material or treat the motion as one for summary judgment.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc*., 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004)). Certain exceptions exist, and the court may consider: (1) documents attached to the complaint as exhibits; (2) documents referenced in the complaint that are central to the plaintiff's claims if the parties do not dispute the documents' authenticity; and (3) matters of which the court may take judicial notice. *See Gee*, 627 F.3d at 1186. The court here takes judicial notice of official court documents form the state court proceedings. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp*., 605 F.2d 1169, 1172 (10th Cir. 1979) ("it has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

[7] Order to Show Cause, ECF No. 9.

[8] Oder to Show Cause, ECF No. 18.

[9] Plaintiffs asserted the reason for the delay came from Arcamone-Makinano being involved in a case in the Republic of the Philippines. *See* Cause Why Defendants' Motion to Dismiss Should not be Granted, ECF No. 19. Plaintiffs offered no reason for the other Plaintiffs lack of involvement in this action. Ultimately the court considers Plaintiffs' opposition, however, being involved in other litigation, particularly when it is only one named Plaintiff, does not provide good cause for Plaintiffs' delays in this matter.

[10] Complaint at 4.

gather began in September 2019 and fell well short of the targets for removal. The BLM then did not return again for two years "while the horse population swelled."[11] Plaintiffs Paz and Peacock regularly visited the wild horses during this time overserving the formation of "protective family bands" in the wild horse herds.[12]

In February 2020, the BLM estimated a population of 474 horses, which was above the specified appropriate management level (AML). The BLM establishes both a high and low AML for specific HMAs. Weather conditions outside of anyone's control started effecting the horse population, and by 2021, it was clear the horses were suffering from drought conditions. From July 13 to July 18, 2021, the BLM conducted the 2021 Gather. Plaintiffs aver this was the worst time to gather and remove the wild horses, which led to needless horse deaths and injuries. The BLM gathered 435 horses and then released 124 back to the Onaqui HMA. Almost all horses from the 2021 Gather that were not released have been adopted or sold. The BLM has no current plans to conduct another gather.

Plaintiffs allege Defendants violated the Wild Free-Roaming Horses and Burros Act,[13] the National Environmental Policy Act,[14] and the Administrative Procedures Act[15] by failing to abide by the BLM's decision to safely maintain the horse population on the Onaqui HMA.[16] Plaintiffs seek a "Judgment and Decree" to (1) "compel the Secretary and BLM to fulfil their obligations according to its own Decisions and relevant statutes"; (2) carry out their official duties to "periodically return to the HMA and maintain the AML"; (3) target the number of

---

[11] *Id.* at 5.

[12] *Id.*

[13] 16 U.S.C. §§ 1331-1340.

[14] 42 U.S.C. § 4321 et seq.

[15] 5 U.S.C. §§ 551-559, 701-706.

[16] Plaintiffs also claim Defendants are in violation of the Consolidated Appropriations Act. Pub. Law 116-260.

horses to be gathered and removed based on the holding facility space and adoption availability; and (4) grant any other proper relief.[17]

Defendants move to dismiss based on a lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Alternatively, Defendants move the court to stay this case pending the outcome of an appeal in *Friends of Animals v. U.S. Bureau of Land Mgmt.*,[18] which challenges management plans of four HMAs, including the Onaqui HMA that is at the center of this case.

## LEGAL STANDARD

"Article III of the Constitution permits federal courts to decide only 'Cases or 'Controversies.'"[19] "To establish a case or controversy, a plaintiff must possess standing to sue."[20] To meet the standing requirement,

> a plaintiff must demonstrate three elements: injury in fact, traceability, and redressability. To demonstrate an injury in fact, a plaintiff must show he has suffered an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. The element of traceability requires the plaintiff to show that the defendant is responsible for the injury, rather than some other party not before the court. Finally, the requirement of redressability ensures that the injury can likely be ameliorated by a favorable decision.[21]

At this stage of the case, the court looks to the well-pleaded allegations of the complaint to determine whether there is standing.[22] In essence, standing boils down to one question as the

---

[17] Complaint at 12.

[18] 728 F.Supp.3d 45 (D.D.C. 2024).

[19] *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020) (citing U.S. Const. art. III, § 2).

[20] *Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

[21] *S. Utah Wilderness All. v. Off. of Surface Mining Reclamation & Enf't*, 620 F.3d 1227, 1233 (10th Cir. 2010) (citation modified).

[22] *See Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190 (10th Cir. 2021).

Supreme Court aptly stated, "plaintiffs must be able to sufficiently answer the question: What's it to you?"[23]

A motion to dismiss for lack of subject-matter jurisdiction may be either a facial or factual attack.[24] A facial attack assumes the allegations in the complaint are true and no further materials are considered.[25] A factual attack goes beyond the allegations in the complaint.[26] When a factual attack is raised, the court has "'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'"[27] The use of this discretion does not convert a Rule 12(b)(1) motion into a motion for summary judgment unless the jurisdictional question is intertwined with the merits.[28]

A motion to dismiss for failure to state a claim tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.[29] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31] This is "a context-specific task that requires the reviewing

---

[23] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021) (citation modified).

[24] *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020).

[25] *See id.*

[26] *See id.*

[27] *Id.* (quoting *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001)).

[28] *See id.*

[29] Fed. R. Civ. P. 12(b)(6); *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991)).

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[31] *Iqbal*, 556 U.S. at 678.

court to draw on its judicial experience and common sense."[32] A complaint need not set forth detailed factual allegations, yet "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.[33]

## ANALYSIS

Defendant argues the court lacks subject matter jurisdiction because Plaintiffs fail to establish standing. To show standing, Plaintiffs "must demonstrate three elements: injury in fact, traceability, and redressability."[34] Defendants argue Plaintiffs fail to establish all three elements.

(i) Plaintiffs fail to demonstrate an injury in fact traceable to the 2021 Gather

Plaintiffs allege a variety of emotional and other injuries from the 2021 Gather. Paz moved to Salt Lake City in 2014 after a brain injury. For the next seven years Paz visited the Onaqui Herd three to four times a month and planned to continue visits. Yet, after the 2021 Gather, Defendants "took away my therapy; family bands, which I photographed, were torn apart."[35] Peacock lives relatively close to the Onaqui Herd and visited about twice a month during the Spring and Summer months starting in 2014. Peacock planned to visit in the summer of 2021, but due to Defendants' actions, Peacock has not been able to visit. Peacock claims to have seen "bloody horses in the holding facilities with lacerations" and horses with other injuries. Arcamone-Makinano claims she planned to visit the horses in July 2021 and thereafter with her children, but that since the 2021 Gather, "wild horses are rarely seen."[36]

---

[32] *Id.* at 679.

[33] *Id.* at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

[34] *S. Utah Wilderness All.* 620 F.3d at 1233.

[35] Complaint at 10.

[36] *Id.* at 11.

To demonstrate an injury in fact, Plaintiffs here must show they "suffered an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[37] Based on the allegations in the Complaint, Plaintiffs fail to demonstrate an injury in fact. As noted by Defendants, many horses remain on the Onaqui HMA, which undermines Plaintiffs alleged injuries. Plaintiffs have not been deprived of the opportunity to view the horses. Alleging "wild horses are rarely seen" is conjecture and lacks requisite particularity.[38] So too is Paz's claim that therapy was taken away. Although family bands may have changed, they have not been removed altogether, and the horses that remain may offer similar "therapy." Peacock's alleged injury of not being able to go see horses again is a self-inflicted choice. A self-inflicted injury, like those alleged by Plaintiffs here, cannot satisfy the requirements for Article III standing.[39] In sum, the circumstances here are like those found in a case from the Eastern District of California. There the court reasoned that it was "unaware of any enforceable right to observe a particular number of animals, and it is sheer speculation that any particular individual or family unit will be affected."[40] The court is not persuaded Plaintiffs' allegations regarding a reduction in wild horse viewing opportunities rises to the level of a legally cognizable injury.

---

[37] *S. Utah Wilderness All*. 620 F.3d at 1233.

[38] Defendants note the Onaqui HMA is quite large with 240,153 acres. Given the vast expanse of land, there are many reasons why horses may be "rarely seen" even before the 2021 Gather.

[39] *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976) (per curiam) ("The injuries to the plaintiffs' fiscs were self-inflicted, resulting from decisions by their respective state legislatures. ... No State can be heard to complain about damage inflicted by its own hand."); *Petro–Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989) (Ginsburg, R.B., J.) (explaining that self-inflicted injuries cannot satisfy the requirements for Article III standing because they break the causal chain linking the defendant's conduct to the asserted injury).

[40] *In Def. of Animals v. U.S. Dep't of Interior*, 737 F. Supp. 2d 1125, 1138 (E.D. Cal. 2010).

As noted by this court in Arcamone-Makinano I, this case is similar to *Downer v. Bureau of Land Mgmt.*[41] In that case the court found that, although sincere, Plaintiffs' interests in seeing the wild horses did "not convey standing for them to sue."[42] Past visits and "unspecific intentions to return are too speculative to establish legal standing or any future injury."[43] And in that case, the plaintiffs did not offer "any evidence that they will actually be deprived of the opportunity to observe and study wild horses in a future visit due to the …. gather."[44] Here like in *Downer*, Plaintiffs allegations of past visits, unspecific intentions to return, and the failure of offering any evidence they will be deprived of the opportunity to observe, photograph, or study horses, due to the 2021 Gather all undermine standing.[45]

### (ii)    Plaintiffs fail to meet the requirement of redressability

Even if the court moved past the injury in fact and traceability requirements, Plaintiffs fail to demonstrate redressability. "In order to satisfy the 'redressability' requirement for constitutional standing, a plaintiff must show that there is at least a 'substantial likelihood' that the relief requested will redress the injury claimed....'"[46] The relief sought by Plaintiffs does not redress their alleged injuries. Moreover, there are no current planned gathers and no evidence that a future gather will be the same as 2021 Gather given the harsh conditions. Plaintiffs' allegations of redressability are lacking and unavailing.

---

[41] 20-cv-297-SWS, 2021 WL 7210048 (D. Wyo 2021).

[42] *Id.* at *3.

[43] *Id.* at *4.

[44] *Id.*

[45] The court has considered the authority relied on by Plaintiffs and finds it unpersuasive. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 872 (1990), and a dissent in *Sierra Club v. Morton*, 405 U.S. 727, 752 (1972), do not change the constitutional requirements for a live case or controversy, nor do they change the analysis for what is required to establish an injury in fact.

[46] *Baca v. King*, 92 F.3d 1031, 1036, 1996 WL 446871 (10th Cir. 1996) (quoting *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 75 n. 20, 98 S.Ct. 2620, 2631 n. 20, 57 L.Ed.2d 595 (1978)).

### (iii) When dismissing a case under Rule 12(b)(1) for lack of subject matter jurisdiction, dismissal is without prejudice

The Tenth Circuit has noted that when a court determines it lacks jurisdiction, then it is incapable of reaching a disposition on the merits of the underlying claims and the matter should be dismissed without prejudice.[47] Here, the court makes that determination. Plaintiffs have failed to adequately plead standing. Thus, the court lacks subject matter jurisdiction, and this matter should be dismissed without prejudice.

### RECOMMENDATION

For the reasons set forth above, the undersigned RECOMMENDS that Defendants' Motion to Dismiss under Rule 12(b)(1) be GRANTED, and this case be dismissed without prejudice.[48]

### NOTICE TO PARTIES

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.[49] The parties must file any objection to this Report and Recommendation within fourteen (14) days of service. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de

---

[47] See *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir.2006) (noting a "dismissal for lack of jurisdiction should be entered without prejudice"); *Craig v. United States*, 340 F. App'x 471, 475 (10th Cir. 2009) (because the "court lacked jurisdiction to consider the merits of the case … it was precluded from making this merits-based determination, and dismissal with prejudice was improper").

[48] To be sure, the undersigned's recommendation is not an invitation for Plaintiffs to simply refile their case like they did following a dismissal in state court. The *sine qua non* is Plaintiffs lack standing to bring their claims. That does not change by simply refiling again.

[49] See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

novo review by the district court of for appellate review."[50] Failure to object may constitute a waiver of the objections upon subsequent review.

DATED this 20 June 2025.

_____
Dustin B. Pead
United States Magistrate Judge

---

[50] *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).